## MONT–O–MIN SALES CORPORATION
## v. WYETH INCORPORATED.
### No. 5634.

United States District Court
W. D. Missouri, W. D.
July 14, 1950.

Matthews, Kelley, Matthews & Dele-hant, John W. Delehant, Jr., all of Omaha, Neb., J. John Gillis, Kansas City, Mo. for plaintiff.

Dudley Browne and Louis H. Baer, of New York City, Abraham E. Margolin, and Edward A. Smith, of Kansas City, Mo., for defendant.

RIDGE, District Judge.

This action, instituted by plaintiff under Section 35 U.S.C.A. § 63, seeks a declaration by the Court that plaintiff is entitled to registration of the trade-mark "Mont-O-Min"; pursuant to an application filed for that purpose in the Patent Office under Serial No. 496,392. In an opposition proceeding before the Patent Office, the Examiner of Interference found that the marks, "Mont-O-Min" and "Morramin" bear such near resemblance as to be likely to give rise to confusion in trade or deception to purchasers when applied concur-rently to the products of the parties here. On appeal, the Commissioner of Patents affirmed the decision of the Examiner, and registration of the notation "Mont-O-Min" as a trade-mark was denied.

In its application for registration of trade-mark, plaintiff alleged that it had adopted and used the name "Mont-O-Min" in connection with "vitamin and mineral capsules and tablets" produced and sold by it since the year 1944. In the specimen and drawing of its mark submitted with said application, it is revealed that said notation was then used by plaintiff in connection with its goods, and was presented to the Patent Office for registration in the following form: "Vitamins Mont-O-Min Minerals." No claim was made, however, in the application filed by plaintiff to the words "vitamins" and "minerals" when used "apart from the mark as shown in said specimen," or drawing.

"Morramin" has been registered as a trade-mark in the Patent Office under Certificate No. 215,815, since July 27, 1926. It is a liquid product sold by defendant, described in the Certificate of Registration as "a medicinal alterative and reconstructive tonic for nervous debility, anæmia, lack of appetite, malnutrition and disorders due to exhausted condition of the system." "Morramin" contains malt extract, licorice, wild cherry, extract of yeast, hypophos-

phites compound and strychnine in designated proportions.

"Mont-O-Min" was proferred by plaintiff for registration as a trade-mark on February 11, 1946. According to the label plaintiff first used on its goods, a specimen of which was filed with its application, it is revealed that the manner and mode plaintiff then made use of its mark, "Mont-O-Min" was to dispense both vitamin and mineral tablets, separately contained in a single package. Said label recites that the package contains 30 pink colored vitamin capsules, and 150 yellow colored mineral tablets; that each vitamin capsule contained Vitamin B, Vitamin G(B2), Niacinamide, Vitamin B6, Calcium Pantothenate;—that the mineral tablets contained Calcium Phosphate, Iron and Iodine in specified quantities.

At the time of the filing of the application for registration of its notation; during the period of time said application was processed in the Patent Office, and throughout the opposition proceeding instituted against the registration thereof; the file wrappers of the Patent Office reveal that all parties considered the issue of registration of plaintiff's notation as a trade-mark from the standpoint, and in relation to the use plaintiff then made of it, conjunctively to the vitamin and mineral field of drugs. Although plaintiff contended before the Patent Office that there was an essential difference between its product and that of the opposer, since its mark was used on mineral and vitamin capsules and tablets —while the mark of the opposer was used on a liquid containing different ingredients, though some minerals and vitamins were included in the opposer's product, the Commissioner of Patents refused such contention. It is clearly revealed in the file wrapper and from the opinion of the Commissioner of Patents denying registration of plaintiff's mark that such denial was premised on the fact, that while there may be some difference "as to the precise composition and usage" of plaintiff's product and the goods of the opposer, "they are certainly goods of the same descriptive properties" and that because of the similarity of "Mont-O-Min" and "Morramin" to goods of the same descriptive properties, the Commissioner of Patents reached the conclusion that their "near resemblance" was such "as to be likely to give rise to confusion in trade or deception of purchasers when applied concurrently to the products" of the opposer and that of the plaintiff, as described in the application for registration and as the goods were there submitted to the Commissioner of Patents for consideration. The decision of the Patent Office denying plaintiff registration of its notation as a trade-mark was wholly premised on the "close similarity of the marks and the similarity of the goods here involved." A very strong inference gleaned from the record in the opposition proceeding is, that the Commissioner of Patents determined the issue of similarity of goods from the singular fact, that the evidence before him revealed that both plaintiff's products, and that of the opposer, made claim to identical vitamin qualities.

Subsequent to the filing of its application in the Patent Office and after the opposition proceeding was instituted thereto, plaintiff began dispensing a single tablet, in which all the vitamin and mineral elements above set forth (recited on the label it filed with its application) were compounded as ingredients. The mode and manner plaintiff then made use of the notation "Mont-O-Min" on its labels, in connection with the description and sale of said tablet, was: "Mont-O-Min Mineral and Vitamin Tablets, C.T.", followed by a listing of the ingredients of the tablet. Later on, plaintiff abandoned and discontinued the use of all vitamins in its product so that it now only manufactures and sells a tablet containing "mineral and mineral traces—Calcium, Phosphorus, Iron and Iodine." In connection with the sale and dispensing of the tablet presently manufactured by plaintiff, it makes use of the notation it here seeks to have registered in the Patent Office in the following form: "Mont-O-Min Mineral Tablets", followed by a listing of the above-mentioned minerals. Plaintiff's President testified in the instant action that it has ceased using all vitamins in the goods produced by it, in connection with which its notation "Mont-O-Min" is used; and that

it has now abandoned all claims of any vitamin content for such product. Notwithstanding the changes plaintiff has made in the use of its trade-mark in connection with its goods, as above stated; and the fact that it has now abandoned all claims of vitamin content in the goods to which its notation is presently applied; there is no evidence before us that any disclaimer of the latter fact has ever been filed in the Patent Office; nor, have there been any drawings submitted as to the new mode and manner of use plaintiff presently makes of its notation to its goods, so that the same could be considered, by the Patent Office, or this Court, in connection with the application under which plaintiff here seeks to establish its right to registration of the trade-mark "Mont-O-Min". The disclaimer made in the application as to the use of the words "vitamins" or "minerals" separate and apart from "Mont-O-Min" is not sufficient for the above purpose.

Although the point has not been directly briefed or raised by the parties, a query presents itself: Can we, in the instant action, regardless of the issues of similarity of names and goods as decided in the opposition proceeding and presented by the parties in this action, enter a decree adjudging that plaintiff is entitled to registration of the disputed trade-mark, in the manner and form as requested in its application filed in the Patent Office, in light of the foregoing facts. We think not.

The instant proceeding before the Court is a trial *de novo* to determine the right of plaintiff to have its mark "Mont-O-Min" registered as a trade-mark in the Patent Office on the application it made therefor. That means that every issue as to the registerability of such proposed mark is before the Court for consideration and determination. In such a proceeding, the issue is whether plaintiff has established, by its evidence, old or new, that it is in compliance with the statutes that permit registration of its trade-mark. Century Distilling Co. v. Continental Distilling Co., 3 Cir., 106 F.2d 486, certiorari denied 309 U.S. 662, 60 S.Ct. 581, 84 L.Ed. 1010; General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 96 F.2d 800;

Gerhardt v. Goserud, D.C., 24 F.Supp. 161. Accordingly, we are not here limited to a consideration of the precise question presented by the notice of opposition to registration of plaintiff's mark as made in the Patent Office. We may investigate not only the issues there and here made by the parties, but also the registerability of plaintiff's mark generally, according to any requirement of the law. Plaintiff here must establish its right to have the mark "Mont-O-Min" registered according to the provisions of the Trade-Mark Registration Act granting such a right to it.

An application for registration of a trade-mark, according to the Trade-Mark Registration Act, consists of three essential parts: (1) a written application, verified by the applicant, stating *inter alia* a a description of the goods in connection with which the mark is used, and the mode or manner in which the mark is used in connection with such goods; (2) a drawing of the mark; and (3) such number of specimens or facsimiles of the mark as actually used by the applicant on his goods. Title 15 U.S.C.A. § 1051. About the two most essential parts of an application for the registration of a trade-mark are the description of the goods in connection with which the mark is to be used, and the drawing and specimens of the mark. The reasons for these requirements are, that when a trade-mark has been registered the statement of the applicant as to "the particular goods or service for which" his mark is registered, and "the drawing of the mark" as filed with his application are required to be set forth and reproduced in the certificate of registration that is issued by the Patent Office on an application. Title 15 U.S. C.A. § 1057.

It is the intendment of the Trade-Mark Registration Act that the particular description of the goods or service for which a trade-mark is proposed to be registered, must be definitely stated in the application. Diederich v. W. Schneider Wholesale Wine, etc., Co., 8 Cir., 195 F. 35, L.R.A.1915B, 889. Under said Act the right to the exclusive use of a registered trade-mark is to be limited to the particular description of the goods described in

the application. Walgreen Drug Stores, Inc., v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956. By the filing of an application for registration of a trade-mark the owner thereof makes manifest that it is his intention to continue the production of the goods or services for which the trade-mark is to be registered. It is only as to the goods or services described in an application, and on which a trade-mark is to be affixed, that entitles the owner thereof to protection of his mark. Cf. Atlas Mfg. Co. v. Street & Smith, 8 Cir., 204 F. 398, 47 L.R.A.,N.S., 1002. This for the reason, as the Supreme Court has said, that "the mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same trade-mark by others on articles of a different description." American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317. Likewise, it is the intendment of said Act that drawings and specimens of a trade-mark revealing the mode and manner an applicant makes use of his mark in connection with the goods described, be accurately and distinctively filed as a part of an application to register a trade-mark thereunder, so that a clear conception and idea may be had, from the application and certificate of registration issued thereon as to how such trade-mark is so used. As to such provisions and intendment of the law, the Patent Office, as it has a right to do, under the Trade-Mark Registration Act, has laid down rigid requirements for applicants to follow in the registration of a trade-mark. Rule 36, Trade-Mark Rules of Practice.

▆ Under the law, compliance with all the provisions of the Trade-Mark Registration Act must first be made before the Patent Office. Title 15 U.S.C.A. § 1051. It is only by the filing of a proper written application in that office and making proof of compliance with the requirements of the Act in question that a plaintiff, in a proceeding such as this, can establish his right to a decree directing registration of a trade-mark. It is on the written application as filed by plaintiff in the Patent Office that a decree in this proceeding primarily depends. Although this is an in-

dependent proceeding to establish the right to registration of a trade-mark, there is no provision of law for us to allow any amendments, deletions or additions, to be made to an application for registration of a mark, or for us to consider the right of registration other than from the contents of the application as filed in the Patent Office, and the proof adduced herein.

Looking at plaintiff's application for registration of the notation "Mont-O-Min", it shows that the goods described therein, in connection with which plaintiff states that it has, and intends in the future to apply and use said notation, are "vitamin and mineral capsules and tablets." Though stated conjunctively, such description of goods is sufficiently broad as to include all kinds of vitamin and mineral capsules and tablets within the connotation thereof. However, viewing the drawing and specimen of its mark, as filed as part of its application, it appears that plaintiff limits the use of said notation to a single vendible article. It uses the terms "vitamins" and "minerals" as being descriptive of the contents of the goods it prepares and sells under the notation "Mont-O-Min". As above stated, the only drawing and specimen of the use plaintiff shows in its application that it makes of said notation, in connection with its goods, is: "Vitamins Mont-O-Min Minerals." No drawing or specimen, establishing that plaintiff has used, or is now using, said notation in connection with a single element of the goods it describes in its application, is revealed therein. Consequently, the only trade-mark we could here decree that plaintiff is entitled to exclusively use in connection with its goods, and which would be reproduced on a Certificate of Registration if granted, would be: "Vitamins Mont-O-Min Minerals" for "vitamin and mineral capsules and tablets."

The proof here is that plaintiff has abandoned and now makes no claim of vitamin content in the tablets it now dispenses under the notation "Mont-O-Min". Therefore, there is a hiatus between the description of goods contained in its application for registration of such notation as a trade-mark and proof as to the actual goods upon which the proposed trade-mark is now be-

ing used. The Commissioner of Patents has not been called upon to decide, and neither are we, under the application for registration filed by plaintiff, whether absent the use of vitamins and the deletion of that term from specimens of its trade-mark plaintiff may lawfully use its notation on a product that places it in a different category within Class 6, goods. To decree that plaintiff has the right to use said notation in the mode and manner established by the drawings and specimen filed as a part of its application would be to decree a misdescription of the goods upon which plaintiff could now legally affix such mark. To state the proposition is to make manifest the futility and illegality of any such action, if attempted.

"A trade-mark right may be lost by changing the ingredients of the product to which it is applied, under such circumstances that its use on a changed product would result in deception." Nims: Unfair Competition and Trade-Marks, 4th Ed., p. 1277. See also, Autoline Oil Co. v. Indian Refining Co., D.C., 3 F.2d 457. Plaintiff in the case at bar has proven by its own evidence that it has so changed the ingredients of its product that to decree registration of the proposed trade-mark, in the manner and form as requested in its application for registration, as now on file in the Patent Office, would be to grant a registration thereof that would only result in deception. The Trade-Mark Registration Act was enacted to dispel deception, not create it. It is the purpose of that law not only to protect the owner of a trade-mark and his property, but also the public from being deceived. In adjudicating the issue of registerability we should not compel the Patent Office to recognize a right in a trade-mark and grant registration thereof under a state of facts which the courts would decline to protect, if the mark was registered. Cf. Levy v. Uri, 31 App.D.C. 441.

Therefore, we do not reach the issues of similarity of names, and of goods, as presented by the parties in their briefs. We express no opinion concerning those issues. We now rule that plaintiff, by its proof made, has not established that it is in compliance with the provisions of the Trade-Mark Registration Act, for the reasons above stated. Consequently, it has not shown that it has a right to have its trade-mark registered in the manner and form as requested, "according to law."

Therefore, plaintiff's petition should be, and the same is hereby, dismissed. It is so ordered.