[redacted]

**Application of BOSE CORPORATION, d.b.a. Inter-Audio Systems.**

**Patent Appeal No. 76–581.**

United States Court of Customs and Patent Appeals.

Dec. 16, 1976.

[redacted]

Charles Hieken, Hieken & Cohen, Waltham, Mass., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents; Fred W. Sherling, Washington, D.C., of counsel.

LANE, Judge.

This is an appeal from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board) affirming the refusal to register SYNCOM for loudspeaker systems for high-fidelity music reproduction. We affirm.

### Background

Appellant filed an application to register SYNCOM for loudspeaker systems for high-fidelity music reproduction [1] in which the specimens of record, instruction sheets and warranty registration cards attached to the goods, are as reproduced below:

1. Application serial No. 435,933, filed September 18, 1972.

# Interaudio Speakers™
## MODEL 3000

**INTERAUDIO** speakers, by taking advantage of the advanced technology inherent in the ACOUSTICOUPLE™ design and the SYNCOM™ speaker testing computer*, provide new levels of performance in direct radiating speakers. Designed and manufactured with the objective of providing the best overall performance at their price, INTERAUDIO speakers reproduce music with a high degree of realism to dramatically increase your listening enjoyment.

* The SYNCOM computer is used under license from Bose Corporation

## INSTALLATION INSTRUCTIONS

### SPEAKER CONNECTION

Standard 18 gauge "lamp cord" or "zip cord" is recommended as cable for connecting the speakers to a power amplifier, when the cable length is less than 50 feet. For longer runs, heavier-duty wire (16- or 14-gauge) is recommended. The following procedure for speaker connection should be followed.

1. Examine the rear of your speakers. You will notice two terminals on the back of each speaker marked "8 ohm" and "common". The "8 ohm" marking corresponds to the positive (+) or red terminal on your amplifier; the "common" marking corresponds to the ground, negative (−) or black terminal.

2. Examine the rear of your receiver or amplifier. There will be terminals for a left speaker and a right speaker. Looking at the terminals for either speaker, notice that there are both a positive (+) or red terminal and a negative (−), black or ground terminal for each. The objective in wiring a speaker is to connect the 8 ohm terminal on the speaker to its corresponding positive terminal on the amplifier, and the common terminal on the speaker to its corresponding common or negative terminal on the amplifier.

3. Speaker cable is double-conductor wire. Determine the "polarity" marking of your wire so that you can tell which conductor is which. Standard lamp cord normally has a ridge or groove along one side which can be seen or felt with the fingers. Speaker cable of clear plastic generally has wire of two different colors (eg., copper and silver). Choose one conductor and decide whether you will use it for positive or negative connections; for example, "Silver is positive" or "Ridged is negative."

4. As described in Step 2, connect the left speaker to the amplifier, 8 ohm to positive, and common to negative. Connect the right speaker in the same manner.

When you have completed this procedure, the speakers should be "in phase". As a check on speaker phasing, place the two speakers side by side, and play music with high bass content through your amplifier operating in the MONO mode. After listening briefly, reverse the two wire connections at one of the two speakers and listen again. The connection with proper phasing is the one that provides the louder bass reproduction.

### SPEAKER PLACEMENT

Selection of loudspeaker placement depends on many factors, including room size and shape, amount of furniture, rugs and drapes, and proximity to corners of the room — all of which play a major role in sound quality. While INTER-AUDIO speakers may be placed either on a bookshelf or on the floor, the closer the woofers are to the floor and to corners, the greater the bass response.

Since high frequencies are more directional than bass, the higher frequencies have more influence on stereo separation. If the speakers are to be oriented horizontally and placed relatively close to each other, the tweeters should be placed to the outside. Furthermore, improved mid bass response will result for bookshelf installations by placing the speaker as close to a corner as possible.

With these general guidelines, you can experiment with different speaker placements to determine the one you like best.

### AMPLIFIER POWER

INTERAUDIO loudspeakers are designed to be powered by the majority of the fine amplifiers and receivers that are on the market today. Power requirements will vary substantially with room size, speaker placement, and type of material listened to. The Model 3000 may be used with amplifiers rated up to 75 watts rms per channel. However, it should be noted that high quality sound at normal listening levels requires less than 15 watts per channel.

When using the Model 3000 with amplifiers rated at more than 75 watts rms per channel, or with sinusoidal or other test signals, we recommend that the speaker be protected by a BUSS MDL 1½ amp "slow-blow" fuse (or equivalent) using an in-line HDH fuse holder (or equivalent) wired in series on the 8 ohm side of each speaker cable. CAUTION: Except for very short periods of time, continuous sine wave or other test signals, even when using amplifiers smaller than those mentioned above, may damage the loudspeaker. Damage resulting from such use is not covered by the warranty.

### CARE AND MAINTENANCE

INTERAUDIO speaker cabinets are of rugged construction with a walnut grained vinyl veneer finish. This surface may be cleaned with a damp cloth using a mild detergent. The speaker grill, which consists of a plastic molded surface covered with a high quality synthetic and cotton fabric, is virtually maintenance free, but can be cleaned occasionally by light dusting.

## WARRANTY

INTERAUDIO speakers are warranted to be free of defects in workmanship and material for five years from the date of delivery to the original purchaser. During that period, any defect that occurs in normal use and has not resulted from abuse, neglect or accident, will be repaired with no charge for parts or labor.

To take advantage of this warranty you must:
1. Complete and mail the attached Warranty Registration Card within fifteen days of purchasing the speaker system;
2. Use the speaker system in accordance with the written instructions provided above;
3. Have repairs performed only through an authorized INTERAUDIO Dealer or Service Center

Should a defect appear to be present, do NOT return the speaker to the factory. Bring it to the INTERAUDIO dealer from whom it was purchased; he will diagnose the problem and arrange for any necessary repairs. If this is not convenient, write to INTERAUDIO SYSTEMS, Customer Service Department, Box 2351, Framingham, Massachusetts 01701, describing the problem and we will advise you as to the procedure to follow.

This structure © 1972 INTERAUDIO

80-102860 Made in the USA • Patent rights pending

## MODEL 3000 WARRANTY REGISTRATION

(NOTE: FOR A **PAIR** OF SPEAKERS, FILL OUT AND MAIL ONLY ONE CARD WITH **BOTH** SPEAKER SERIAL NUMBERS.)

YOUR NAME _____ AGE _____

ADDRESS _____

CITY _____ STATE _____ ZIP _____

SERIAL NUMBERS _____

PURCHASE DATE _____ DEALER _____

CITY _____ STATE _____

### WE WOULD APPRECIATE YOUR ANSWERING THE FOLLOWING:

I learned of your product through: Advertising in _____
☐ Friend ☐ Dealer ☐ Other _____

INTERAUDIO 3000 ☐ is my first set of speakers
 ☐ is in addition to _____ Speakers
 ☐ replaces _____ Speakers

My amplifier has approximately _____ rms. watts/channel.

COMMENTS _____
_____
_____

80-102860

WARRANTY REGISTRATION CARD

**BUSINESS REPLY MAIL**

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

POSTAGE WILL BE PAID BY:

**INTERAUDIO SYSTEMS**

POST OFFICE BOX 2351

FRAMINGHAM, MASS. 01701

FIRST CLASS
PERMIT
No. 421
Framingham,
Mass.

2-A 4/95,938

---

The examiner refused registration due to a discrepancy between the specimens of record and the goods set forth in the application. As stated by the examiner, the specimens of record show the use of SYNCOM to identify a speaker-testing computer rather than the goods in the application, viz., loudspeaker systems. Relying on 15 U.S.C. § 1052,[2] the examiner urged that the specimens of record fail to demonstrate the use of SYNCOM to indicate the origin of the goods in the application; that instead, SYNCOM demonstrably serves a trademark function, i. e., indicates origin, only with respect to a speaker-testing computer. In a brief opinion, the board essentially adopted the reasoning of the examiner and affirmed his refusal to register.[3]

### OPINION

In its main brief and reply brief before us, appellant asserts that neither the board nor the examiner applied any statutory basis in refusing to register SYNCOM. We cannot agree. The examiner specified the statutory basis (15 U.S.C. § 1052) in his final action and answer, and the board manifestly agreed with the examiner. Moreover, the rationale stated by the PTO for refusing to register is abundantly clear to us: the specimens of record contradict the use of SYNCOM as a trademark with respect to loudspeaker systems for high-fidelity music reproduction.

 The Trademark Act is not an act to register mere words, but rather to register trademarks. Before there can be registration, there must be a trademark, and unless words have been so used they cannot qualify. *In re Standard Oil Co.*, 275 F.2d 945, 47 CCPA 829, 125 USPQ 227 (1960). Thus, it is essential for registration that words first become a trademark, i. e., "any word, name, symbol, or device or any com-

---

2. Section 1052 states in pertinent part:

 No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless * * *.

3. The board opinion appears in digest form at 191 USPQ 296 (1975).

bination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."[4] Indeed, the classic function of a trademark is to point out distinctively the origin of the goods to which it is attached.

An important function of specimens in a trademark application is, manifestly, to enable the PTO to verify the statements made in the application regarding trademark use.[5] In this regard, the manner in which an applicant has employed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used *as a trademark* with respect to the goods named in the application. *In re Griffin Pollution Control Corp.,* 517 F.2d 1356, 186 USPQ 166 (Cust. & Pat.App.1975); *In re E. Kahn's Sons,* 343 F.2d 475, 52 CCPA 1201, 145 USPQ 215 (1965). See also *In re Chicago Rawhide Manufacturing Co.,* 455 F.2d 563, 59 CCPA 963, 173 USPQ 8 (1972); *Mont-O-Min Sales Corp. v. Wyeth Inc.,* 92 F.Supp. 150, 86 USPQ 315 (W.D.Mo. 1950); *Textron Inc. v. Alexander Smith & Sons Carpet Co.,* 103 USPQ 151 (Comm'r Pats. 1954).

Applying these fundamentals of trademark law to the facts before us, it is quite apparent that, in the specimens of record, only INTERAUDIO identifies the loudspeaker systems for high-fidelity music reproduction as originating with appellant and distinguishes such goods from those manufactured and sold by others. The mark SYNCOM merely relates to a speak-er-testing computer. Only INTERAUDIO would be used by purchasers in asking for the loudspeaker systems set forth in appellant's application, and the mark SYNCOM neither serves as an indication of origin of such goods, nor serves any other valid trademark function with respect to such goods. SYNCOM is not used as a trademark with respect to such goods.

Finally, appellant relies upon its advertisement (appendix A of the main brief before us) which states, inter alia, that SYNCOM is "your guarantee of quality from BOSE" and "as your assurance of stringent quality control, this mark [SYNCOM] appears on the back panel of every BOSE speaker." Appellant considers the advertisement persuasive evidence in this case. The point is, however, that an application for registration must be judged in light of the *specimens* of record. Although the examiner in this case invited appellant to submit five new specimens showing application of the mark SYNCOM as described in the advertisement, and supported by an affidavit attesting to their use as of the application filing date, appellant did not comply. The specimens which are of record fail to support, indeed they contradict, the use of SYNCOM as a trademark with respect to loudspeaker systems for high-fidelity music reproduction, and the decision of the board is, accordingly, *affirmed.*

*AFFIRMED.*

---

**4.** 15 U.S.C. § 1127.

**5.** 15 U.S.C. § 1051(a)(3) requires, together with the filing of a trademark application, "such number of specimens or facsimiles of the mark *as actually used* as may be required by the Commissioner." [Emphasis added.]