Paper No. 20
CEW

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB     2/26/98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Carmen D. Caserta
_____

Serial No. 74/448,220
_____

Robert H. Ware of Ware, Fressola, Van Der Stuys & Adolphson for applicant.

Jean-Marc Brun, Trademark Examining Attorney, Law Office 106 (Mary I. Sparrow, Managing Attorney).
_____

Before Seeherman, Quinn and Walters, Administrative Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:


Carmen D. Caserta has filed a trademark application to register the mark FURR-BALL FURCANIA for "children's books and periodical publications, namely, comic strips and comic magazines."[1]

---

[1] Serial No. 74/448,220, in International Class 16, filed October 18, 1993, based on an allegation of a bona fide intention to use the mark in commerce. After the notice of allowance issued, applicant filed a statement of use, on May 15, 1995, alleging a date of first use as of January 19, 1994, and a date of first use in commerce as of April 15, 1995.

The Trademark Examining Attorney has finally refused registration under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. 1051, 1052 and 1127, on the ground that applicant's proposed mark, as used on the specimens of record, does not function as a trademark; rather, it merely identifies the name of a fictitious character appearing in applicant's publications.

Applicant has appealed. Both applicant and the Examining Attorney have filed briefs, but an oral hearing was not requested. We affirm the refusal to register.

The question herein is whether the record supports a finding that FURR-BALL FURCANIA functions as a trademark to identify the source of the identified goods and to distinguish them from the goods of others. This determination is made herein based solely upon the record before us. The court, in *In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976), stated that "[b]efore there can be registration, there must be a trademark, and unless words have been so used they cannot qualify." (*citation omitted.*) Noting that "the classic function of a trademark is to point out distinctively the origin of the goods to which it is attached," the court stated further (*citations and footnote omitted*):

> An important function of specimens in a trademark application is, manifestly, to enable the PTO to verify the statements made in the application regarding trademark use. In this regard, the

> manner in which an applicant has employed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used *as a trademark* with respect to the goods named in the application.

*Id*. at 215-216.

The specimen, and only evidence of use of the mark herein, consists of several copies of a children's story. The proposed mark appears on the cover page of that story as part of the title, as shown below:

Serial No. 74/448,220

Additionally, the proposed mark identifies the main character of the story and, as such, appears throughout the story.[2]  Following are examples of two pages from the story:

Both applicant and the Examining Attorney agree that the proposed mark, FURR-BALL FURCANIA, identifies the principal character in a single children's story and that it appears in the title of the story and throughout the story. The evidence of record does not contain any indication that FURR-BALL FURCANIA is used in connection with a series of stories or books, nor does applicant so contend.[3]

---

[2] We note that the proposed mark appears in the application drawing and on the cover page of the story submitted as a specimen as FURR-BALL FURCANIA; whereas it appears throughout the story as FURRBALL-FURCANIA. This appears to be an inconsequential difference between the mark as applied for and as it appears in the body of the story.  Thus, for the purpose of our analysis, we consider the terms equivalent.

[3] We note that the identification of goods herein includes "periodical publications."  While a term may function as a mark to identify a series of periodical publications, the mere inclusion of "periodical publications" in the identification of goods, without any indication of how the mark is used in connection therewith, is not sufficient to show that the proposed mark is used to indicate source for a series of

4

The Examining Attorney contends that, as FURR-BALL FURCANIA merely identifies the principal character of applicant's story and appears as part of the title thereof, it does not serve as a trademark to identify and distinguish applicant's goods from those of others.

Applicant argues, essentially, that its mark is registrable in view of third-party registrations for the names of other principal characters in fictional works[4]; that it is not necessary for such a character to be widely known in order to serve as a trademark; and that its trademark is prominently displayed on the cover and on

publications. In this case the only evidence of use of FURR-BALL FURCANIA is in connection with a single publication. Thus, the mere inclusion of "periodical publications" in the identification of goods does not affect our consideration of the issues in this case.

[4] With its request for reconsideration, applicant submitted a list, from an unidentified source, of third-party registered marks. The Examining Attorney objects, correctly, to the adequacy of this evidence. Applicant contends, in response, that the characters listed and their manner of use are so well-known to the public that the Board would be "well justified" in taking judicial notice thereof. However, the Board will not take judicial notice of third-party registrations. In order to make registrations of record, soft copies of the registrations themselves, or the electronic equivalent thereof, i.e., printouts of the registrations taken from the electronic records of the Patent and Trademark Office's (PTO) own data base, must be submitted. *See, Weyerhaeuser Co. v. Katz*, 24 USPQ2d 1230 (TTAB 1992).

Even if applicant had properly made of record the third-party registrations, they would be unpersuasive. It is irrelevant to this case either that third-party registered marks may be names of fictional characters, regardless of whether such characters may be well-known, or that such marks may be registered in connection with a wide variety of goods. With respect to those third-party marks registered for books and/or periodicals, we do not have the records of the listed registrations, so we do not know what evidence was before the Examining Attorney in those cases. Our determination of whether FURR-BALL FURCANIA functions as a mark must be based upon its manner of use on the specimens in the application before us. That a term identifying a fictional character may function as a trademark in another case, which record is not before us, is not determinative of the question in this case. *See, In re Hechinger Investment Co. of Delaware Inc.*, 24 USPQ2d 1057 (TTAB 1991).

nearly every page of the publication submitted as a specimen herein.

We agree with the Examining Attorney that, on this record, the designation FURR-BALL FURCANIA is used in association with, and as the name of, a fictitious character which is featured as the main character in, and as part of the title of, applicant's illustrated children's story.

There is no question that the name of a fictitious character may be registrable as a trademark or a service mark if that name is used on or in association with the goods in such a manner as to identify the goods and distinguish them from those of others, and the goods are sold or transported in commerce. Likewise, as applicant correctly notes, a finding that the fictitious character's name is well-known is not a prerequisite to the registrability of that name as a trademark. Rather, the sole issue is whether the name of the fictitious character is *used* in such a manner that it is likely to be perceived as a trademark in connection with the identified goods. This is quite distinct from a finding that a mark is well-known, which involves consideration of the renown of the mark among relevant consumers.

Contrary to applicant's contention, the mere fact that, as this record establishes, FURR-BALL FURCANIA is the main character's name and this name appears prominently on the

cover and on every page of applicant's children's story is insufficient to warrant a conclusion that FURR-BALL FURCANIA functions as a trademark. Such use, without more, simply reinforces the conclusion that the name merely identifies the main character in the story.

Further, applicant's use of a "TM" in proximity to FURR-BALL FURCANIA as it appears on the cover page of applicant's story does not require a different conclusion. In the analogous case of *In re Frederick Warne & Co., Inc.*, 218 USPQ 345 (TTAB 1983), the Board found that the proposed mark, an illustration of a frog, was merely a cover illustration for a book and served no other purpose than as a depiction of the main character of the book. The Board stated the following about the illustration of the main character and the use of a "TM" in proximity thereto:

> It may be that at some point applicant intended that [the illustration] should serve a trademark purpose. The use of the letter "TM" in proximity to the figure on the cover attests to that intention. But we do not know when applicant embraced that objective. Nor do we have a particle of evidence which shows what steps, if any, were taken to convert the illustration to trademark usage or to educate the public as to its conversion.

(*Id*. at 347-348.)

Similarly, the appearance of the proposed mark as part of the title of applicant's story does not establish the registrability of such subject matter in connection with the identified goods. In the seminal case on the registrability

of titles of books as trademarks, *In re Cooper*, 254 F.2d 611, 117 USPQ 396, 398 (CCPA 1958),[5] the court found the title of a book to be unregistrable as a trademark for books because, essentially, titles of books are considered to be nothing more than the name by which the book may be identified in much the same way that other items of merchandise are identified.  The court opined (*supra* at 400):

> [H]owever arbitrary, novel or non-descriptive *of contents* the name of a book – its title – may be, it nevertheless *describes* the book.  Appellant has nowhere attempted to answer the question, How else would you describe it – What else would you call it?  If the name or title of a book were not available as a description of it, an effort to denote the book would sound like the playing of the game "Twenty Questions."

However, the court reiterated the general principle that whether certain subject matter is a trademark in connection with books must be determined on the specific facts pertaining to the manner of use thereof (*supra* at 398):

> No one has asserted that a word may not be *used* as a trademark for books or that there cannot *be* trademarks for books, in the form of a word or otherwise, or that trademarks for books cannot be registered under the Lanham Act.  Appellant appears to assume that [its applied-for mark] has been used *as a trademark* for books in asking that it be registered, but that is what we have to decide.  Nothing we say should be taken as

---

[5] *See also*, *In re Scholastic Inc*., 223 USPQ 431 (TTAB 1984) *(Scholastic I); Paramount Pictures Corp. v. Romulan Invasions*, 7 USPQ2d 1897, 1899 (TTAB 1988); *In re Hal Leonard Publishing Corp*., 15 USPQ2d 1574 (TTAB 1990); *In re Scholastic Inc*., 23 USPQ2d 1774 (TTAB 1992) *(Scholastic II);* and *In re Phil Postuma and Cordell Langeland,* __ USPQ2d __ (S.N. 74/664,809, February 24, 1998).

implying that no trademark for books can be
registered; but before there can be registration
there must be a trademark and a trademark exists
only where there has been trademark use.

*(emphasis in original.)*

*Cooper* and the cases following it have consistently reaffirmed the principle that subject matter that is merely the title of a single work is not used as a trademark. While subject matter which is used to identify a series of works may be a registrable trademark, such use is not the case herein.[6] Although pertaining to a series of works, the Board's analysis in *In re Scholastic Inc.*, 223 USPQ 431 (TTAB 1984) *(Scholastic I),* is pertinent to the case before us. In *Scholastic I*, the Board affirmed the refusal to register THE LITTLES for a series of educationally oriented children's books, for the improvement of reading skills. The Board found that, while applicant did produce a series of books, the record in that case did not support a finding that THE LITTLES was used as a trademark in connection therewith. Rather, the Board concluded that, as used in the

---

[6] The Board, in *In re Scholastic Inc.*, 23 USPQ2d 1774 (TTAB 1992) *(Scholastic II),* found THE MAGIC SCHOOL BUS, which formed part of the title of each book in a series of children's books, to be a registrable trademark in connection with "a series of non-fiction picture books for children." In that case, there was substantial evidence showing the prominent and distinctive display of the phrase THE MAGIC SCHOOL BUS on book covers in the series; as well as evidence of reviews in widely circulated publications referring to "the Magic School Bus series" and similar terminology; substantial promotional materials for "THE MAGIC SCHOOL BUS" series; and recognition by the public of the phrase as a mark. While this case is inapposite to the extent that it pertains to the use of a phrase to identify a *series* of books, which is not the case herein, it demonstrates the nature and scope of an evidentiary showing which may establish trademark use of a phrase in connection with books.

title of each book in the series, THE LITTLES would be viewed only as identifying the main characters in that book and not as a trademark for a series of books. The case herein is analogous to *Scholastic I*, and distinguishable from *Scholastic II*, because of the lack of evidence, in both *Scholastic I* and this case, of use of the subject matter as a trademark. In this case, as in *Scholastic I*, FURR-BALL FURCANIA appears only as part of the title and in the text of the book to identify and describe the main character in the story. We cannot find, on this record, that FURR-BALL FURCANIA functions as a trademark in connection with children's books and periodical publications, namely, comic strips and comic magazines.

*Decision:* The refusal under Sections 1, 2 and 45 of the Act on the ground that FURR-BALL FURCANIA, as used on the specimens of record, does not function as a trademark for the identified goods is affirmed.

E. J. Seeherman

T. J. Quinn

C. E. Walters
Administrative Trademark Judges,
Trademark Trial and Appeal Board