THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed: April 12, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Aerospace Optics, Inc.
_____

Serial No. 76171288
_____

Daniel E. Venglarik of Novakov Davis & Munck, P.C. for Aerospace Optics, Inc.

Henry Zak, Trademark Examining Attorney, Law Office 108 (Andrew Lawrence, Managing Attorney).
_____

Before Walters, Holtzman and Kuhlke, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Aerospace Optics, Inc. has filed an application to register, on the Principal Register, the mark shown below,

Spectrum

for goods identified as "illuminated pushbutton switches, namely pushbutton switches with dimmable illumination for use in military and civilian aircraft cockpits, aviation crewstations, ships and command, communications, control

and intelligence systems" in International Class 9.[1] The application was filed on November 27, 2000, based upon an allegation of a bona fide intention to use the mark in commerce. The application was published for opposition on June 18, 2002 and a notice of allowance subsequently issued on September 10, 2002. Applicant filed its statement of use and a specimen on December 9, 2002, alleging first use anywhere and in commerce as of September 29, 2000. The examining attorney issued a refusal to register under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052 and 1127, on the ground that the mark, as depicted in the specimen of use, fails to function as a trademark.

When the refusal was made final, applicant appealed. Briefs have been filed, but applicant did not request an oral hearing. We affirm the refusal to register.

The sole issue in this appeal is whether the applied-for mark is used as a trademark to identify the goods listed in the notice of allowance.

---

[1] The mark is described as comprising "the term 'SPECTRUM' with each letter in a different human visible or night vision imaging system [NVIS] color, with the colors following the sequence: blue; blue-green [NVIS green A]; green [NVIS green B]; white or white with black outline; yellow [NVIS yellow]; amber [aviation yellow]; orange-red [NVIS red]; and red [aviation red]." The drawing of the mark is lined for color.

As has been frequently stated, "Before there can be registration, there must be a trademark." In re Bose Corporation, d/b/a Interaudio Systems, 546 F.2d 893, 896, 192 USPQ 213, 215 (CCPA 1978). The starting point for our analysis is Section 45 of the Trademark Act, as amended, where "trademark" is defined as "any word, name, symbol, or device, or any combination thereof used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of goods, even if that source is unknown." 15 U.S.C. §1127. This section further provides that a mark shall be deemed to be in use in commerce on goods when "it is placed in any manner on the goods or their containers ... or on the tags or labels affixed thereto ... and the goods are sold or transported in commerce." Id. Thus, the mark must be used in such a manner that it would be readily perceived as identifying the specified goods and distinguishing a single source or origin for the goods. In re Safariland Hunting Corp., 24 USPQ2d 1380 (TTAB 1992). The mere fact that a designation appears on the specimens of record does not make it a trademark. Id.

A critical element in determining whether matter sought to be registered is a trademark is the impression

the matter makes on the relevant public.  Thus, in a case such as this, the critical inquiry is whether the asserted mark would be perceived as a source indicator.  See In re Brass-Craft Mfg. Co., 49 USPQ2d 1849 (TTAB 1998); In re Volvo Cars of North America Inc., 46 USPQ2d 1455 (TTAB 1998).  To be a mark, the term must be used in a manner calculated to project to purchasers or potential purchasers a single source or origin for the goods.  In re Volvo, supra.  We determine whether this has been achieved by examining the specimens of use along with any other relevant material submitted by applicant during prosecution of the application.  In re Safariland, supra.  Here, we have only the specimens of record, shown below, wherein the applied-for mark appears in two separate locations inside applicant's point-of-purchase display in the form of a brochure:





The examining attorney argues that the applied-for mark, in the context of use as seen in the specimens performs "only an informational function, identical to the terminology in which the wording is used – to identify favorable features of the switches, rather than a particular source of origin." Br. p. 6. Addressing the color element of the applied-for mark, the examining attorney stated:

> While the term SPECTRUM is displayed in differing colors, appearing among these clearly informational statements regarding the capabilities and characteristics of the switches, it would be difficult for consumers to determine if the word is intended to be used as a mark, or displayed in a variety of colors as an attention getting means of conveying the multiple color capability of such switches, only conveying information regarding the features or characteristics of the switches, no different from the other informational statements among which it is used. Br. p. 5.

Applicant argues that "The sections of the Lanham Act cited by the Examining Attorney as the basis for the refusal do not specifically require that the specimen use the mark in some particularly 'trademark' manner and exclusive of all informational function.  Section 1 merely requires 'specimens or facsimiles of the mark as used ...', while Sections 2 and 45 make no mention of specimens at all."  Br. pp 5-6.  Further, applicant argues "Nothing in either the statute or the rules precludes the use of the mark in an informational manner, in addition to use as a trademark."  Br. p. 7.  Applicant states that "no defined standards for evaluating purchasers' perception of the manner of use of [sic] mark in determining that the use was 'merely informational' were articulated or followed, such that the decision was arbitrary and capricious."  Br. p. 8 n. 3.  Applicant concludes that "Where, as in the subject application, the subject matter and manner of use of the mark are sufficient to enable purchasers to recognize the mark as being a trademark, registration is not precluded by any informational aspects of the mark and/or its manner of use."  Br. p. 9.  Finally, applicant argues that its use of the TM symbol next to the applied-for mark is "dispositive of the question" whether it functions as a trademark,

6

stating that to "hold that a mark with which the common-law trademark symbol is associated would NOT be perceived by purchasers as a trademark is entirely at odds with the purpose of that symbol." Br. p. 10.

It is well established that the refusal of failure to function is properly based on Sections 1, 2 and 45 of the Act. See, e.g., In re Volvo, supra. In this case, we find that the manner in which the applied-for mark is used on the specimens of use is not indicative of trademark use. In view of the meaning of SPECTRUM, "a continuum of color formed when a beam of white light is dispersed (as by passage through a prism) so that its component wavelengths are arranged in order,"[2] and the context of its use, i.e., among several terms identifying features of the goods, (e.g., "spectrum of colors"), prospective purchasers would not view this word as a source identifier, but rather as part of the text listing the features of the product. As used by applicant, and as likely perceived by purchasers and prospective purchasers, the applied-for mark merely informs the potential purchaser of an aspect of the goods, namely, the multiple color feature. The coloring and font

---

[2] *Merriam-Webster's Collegiate Dictionary* (10th ed. 1999). University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983) (Board may take judicial notice of dictionary definitions).

are not sufficient to imbue this term, as used, with source-identifying significance or to set it apart from the other informational wording. See In re Brass-Craft, supra. Moreover, as noted by the examining attorney, the colors in the mark merely manifest and emphasize the information the word conveys.

The use of the TM symbol on the inner flap location of one specimen does not change the commercial impression of the applied-for mark, which as used in the specimen only informs the consumer of the features of the pushbutton switches. The "mere intent that a term function as a trademark is not enough in and of itself, any more than attachment of the trademark symbol would be, to make a term a trademark." In re Manco Inc., 24 USPQ2d 1938 (TTAB 1992) (THINK GREEN failed to function as a mark for, inter alia, mailing and shipping cardboard boxes). See also In re Volvo, supra (DRIVE SAFELY failed to function as a mark for automobiles and structural parts therefor); In re Remington Products, Inc., 3 USPQ2d 1714 (TTAB 1987) (PROUDLY MADE IN THE USA failed to function as a mark for electric shavers and parts thereof). Applicant attempts to distinguish these cases by noting that the subject matter was deemed unregistrable in each case due to the nature of the mark itself whereas, in this case, the mark contains both

8

"informational aspects" and "aspects that communicate to purchasers that the mark is a trademark" and serves "both as a trademark (source/quality indicator) AND as an informational device."

However, while the applied-for mark has not been refused as descriptive under Section 2(e)(1) of the Trademark Act, the fact that the applied-for mark may be registrable if it were used in a different context is not the issue. Rather, the applied-for mark, as used, would not be perceived as a trademark, and the mere addition of the trademark symbol is not sufficient to transform the non-trademark use into trademark use. The term fails to function as a mark not only because of the informational nature of the term, but also because of the way it appears on the specimen. The manner in which the applied-for mark is used on the specimens presents the applied-for mark as part of the product features and not as a trademark. Even an inherently distinctive designation is not a trademark if it is not used in a trademark manner. See McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition §3.3 (4th ed. database updated 2005); see also In re Niagara Frontier Services, Inc., 221 USPQ 284 (TTAB 1983) (WE MAKE IT, YOU BAKE IT! held not merely descriptive, but refusal based on failure to function as a service mark affirmed).

In summary, the manner in which the applied-for mark is being used does not support a finding that potential consumers would perceive it as a trademark.  As used in the specimens of record, the applied-for mark does not convey the commercial impression of a mark identifying the source of origin of applicant's goods.  This conclusion is not altered by the fact that a TM symbol is displayed in one location in one of applicant's brochures adjacent to the word SPECTRUM.  See In re B.C. Switzer & Co., 211 USPQ 644 (TTAB 1981).

**Decision**:  The refusal to register under Sections 1, 2 and 45 of the Act is affirmed.