This Opinion Is a
Precedent of the TTAB

Mailed: June 10, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re TracFone Wireless, Inc.*

———

Serial No. 87221529

———

Candice E. Kim of Greenberg Traurig, LLP,
    for TracFone Wireless, Inc.

Allison Holtz, Trademark Examining Attorney, Law Office 111,
    Chris Doninger, Managing Attorney.

———

Before Ritchie, Shaw, and Hightower,
    Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

Applicant TracFone Wireless, Inc. seeks registration on the Principal Register of the proposed mark UNLIMITED CARRYOVER, in standard characters and with a claim of acquired distinctiveness in whole under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), for the following services in International Class 38:

> Telecommunication services, namely, transmission of voice, data, graphics, images, audio and video by means of telecommunications networks, wireless communication networks, and the Internet; Telecommunication services,

namely, wireless telephone services; Telephone communication services.[1]

The Trademark Examining Attorney has refused registration under Sections 1, 2, 3, and 45 of the Trademark Act, 15 U.S.C. §§ 1051-53 and 1127, on the ground that the proposed mark, as shown on the specimens of record, fails to function as a service mark for the recited services. After the refusal was made final, Applicant appealed to this Board and requested reconsideration, which was denied. The appeal is fully briefed. We affirm the refusal to register.

## I.    Legal Standard for Failure to Function as a Service Mark

It has often been said that: "Before there can be registration, there must be a trademark." *In re Aerospace Optics Inc.*, 78 USPQ2d 1861, 1862 (TTAB 2006) (quoting *In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1978)). The starting point for our analysis is Section 45 of the Trademark Act, where "trademark" is defined in relevant part as "any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." As the Board stated in *American Velcro, Inc. v. Charles Mayer Studios, Inc.*, 177 USPQ 149, 154 (TTAB 1973):

> It is settled that not every designation that is placed or used on or in connection with a product necessarily functions or is recognized as a trademark for said product; not every designation adopted with the intention that it performs a trademark function and even labeled as a

---

[1] Application Serial No. 87221529 was filed October 31, 2016, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), asserting first use anywhere and use in commerce as of November 27, 2009.

> trademark necessarily accomplishes that purpose; and there are certain designations that are inherently incapable of functioning as trademarks to identify and distinguish the source of the products in connection with which they are used.

This analysis applies to service marks as well. Trademark Act Section 3. The mere fact that a designation appears on the specimens of record does not make it a mark. *In re Safariland Hunting Corp.*, 24 USPQ2d 1380, 1381 (TTAB 1992). Subject matter that, due to its inherent nature or the manner in which it is used, does not function as a mark to identify and distinguish the applicant's identified services cannot be registered. *In re HSB Solomon Assocs. LLC*, 102 USPQ2d 1269, 1270 (TTAB 2012).

The key question is whether the asserted mark would be perceived as a source indicator for Applicant's services. *See In re Brass-Craft Mfg. Co.*, 49 USPQ2d 1849, 1852 (TTAB 1998), *aff'd mem.*, 217 F.3d 855 (Fed. Cir. 1999); *In re Volvo Cars of N. Am. Inc.*, 46 USPQ2d 1455, 1459 (TTAB 1998). "The critical inquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public. To make this determination we look to the specimens and other evidence of record showing how the designation is actually used in the marketplace." *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010) (citations omitted). Thus, in this case, we examine Applicant's specimen to determine whether UNLIMITED CARRYOVER would be perceived as a source indicator for Applicant's recited telecommunications services by consumers of telecommunications services.

Serial No. 87221529

## II.  Applicant's Specimen

Applicant's sole specimen is:



The Examining Attorney contends that UNLIMITED CARRYOVER as shown on the specimen fails to function as a mark because it does not identify the source of the services and distinguish them from others due to its manner of use, both because of its placement on the specimen and because the wording is "informational and common." 10 TTABVUE 7.

We agree that UNLIMITED CARRYOVER, as used on the specimen, does not identify the source of Applicant's services and distinguish them from others. In the specimen, the wording UNLIMITED CARRYOVER is last in a list of apparent features of Applicant's "No-Contract Plans with Talk, Text, Data and Unlimited Carryover® starting at $15." The phrase is set in the midst of other clearly informational matter, far from the TRACFONE logo. This suggests that UNLIMITED CARRYOVER too is informational matter. *See, e.g.*, *In re AOP LLC*, 107 USPQ2d 1644, 1654 (TTAB 2013).[2] Nothing in the specimen suggests that "Unlimited Carryover" identifies the source of the telecommunications services any more than the other listed components of Applicant's plans: "Talk," "Text," and "Data." Rather, the phrase will be perceived as part of the services rather than as a mark designating the source of the services. *See In re Keep a Breast Found.*, 123 USPQ2d 1869, 1881 (TTAB 2017).

---

[2] *See also In re J. Hungerford Smith Co.*, 279 F.2d 694, 126 USPQ 372, 373 (CCPA 1960) (stating, after reviewing specimens submitted: "We agree with the Patent Office that, so far as the record shows, appellant has not used 'Burgundy' as a trademark for a soft drink syrup, but only as a flavor designation. It follows that registration was properly refused, and it is unnecessary to consider the further holding that 'Burgundy' is descriptive of appellant's product and has not been shown to have acquired a secondary meaning."); *In re True Temper Corp.*, 219 F.2d 957, 105 USPQ 69, 71 (CCPA 1955) ("[A] combination of descriptive words used [CRIPPLED SHAD for a fishing lure], as in the case at bar, as a mere adjunct to applicant's trade name are not registrable in any case where the combination is of such a character as to be incapable of becoming a trade-mark or of distinguishing the applicant's goods.") (citations omitted); *In re Duvernoy & Sons, Inc.*, 212 F.2d 202, 101 USPQ 288, 289 (CCPA 1954) ("[W]e think it is clear from the exhibits that Duvernoy & Sons, Inc., appellant's trade name (generally shown in large, fanciful letters), is relied upon to denote origin and that 'Consistently Superior' is merely an adjunct thereto, operating in the shadow thereof, to indicate to purchasers that appellant's goods are always superior in quality. . . . A careful consideration of the manner in which the appellant has employed the notation in question, as indicated principally by the exhibits, compels us to conclude that actual trade mark usage of 'Consistently Superior' is not adequately shown in the record.").

In addition to its placement on the specimen of use in a list of features, the inherent nature of the phrase itself is merely informational and fails to function as a mark. TMEP § 1202.04 (Oct. 2018) instructs that:

> Matter is merely informational and does not function as a mark when, based on its nature and the context of its use by the applicant and/or others in the marketplace, consumers would perceive it as merely conveying general information about the goods or services or an informational message, and not as a means to identify and distinguish the applicant's goods/services from those of others.

The Examining Attorney introduced a dictionary definition of "unlimited" meaning: "Having no restrictions or controls."[3] Applicant submitted a definition of "carry-over" meaning "that which is carried over, postponed, or extended to a later time, account, etc."[4] We also take judicial notice that the unhyphenated noun "carryover" is defined on Merriam-Webster.com as "the act or process of carrying over" and "something retained or carried over."[5]

Applicant's use of the term "carryover" in association with wireless data is seen in this offer of a "Total Wireless $10 Add-On Carryover Data Card" on walmart.com:[6]

---

[3] December 5, 2016 Office Action at TSDR 16-17, from thefreedictionary.com.

[4] June 5, 2017 Response to Office Action at TSDR 12, from dictionary.com.

[5] The Board may take judicial notice of definitions from dictionaries, including online dictionaries that exist in printed format. *E.g.*, *In re S. Malhotra & Co. AG*, 128 USPQ2d 1100, 1104 n.9 (TTAB 2018).

[6] December 5, 2016 Office Action at TSDR 2-7. Applicant owns Total Wireless. *See, e.g.*, Appeal Brief at 10-11, 8 TTABVUE 11-12; June 5, 2017 Response to Office Action at 16-28 (printouts of TOTAL WIRELESS registrations from the TSDR database).



Although this use is accompanied by the federal trademark registration symbol, this is not dispositive for our analysis, as further discussed below. Rather, this use too appears to be informational. The Examining Attorney also submitted an example of the use of "carryover" from the website of third party Northwest Cell.[7] The page, titled

---

[7] December 5, 2016 Office Action at TSDR 11-12. We have not considered two other examples from websites located outside the United States. One of the websites is for a company that appears to provide wireless services only in New Zealand, while the other is a news article offering consumer advice on a site that "caters to a loyal South African audience." *See* June 5, 2017 Response to Office Action at TSDR 29-33. Foreign websites may have probative value depending on the circumstances, including whether the U.S. consuming public is likely to have been exposed to the site. *In re Florists' Transworld Delivery Inc.*, 106 USPQ2d 1784, 1786 (TTAB 2013). Here, however, although the foreign websites are in English, they are clearly directed to local consumers or readers and there is no basis in this record to conclude that U.S. consumers of telecommunications services are likely to have been exposed to them.

"Carryover Data," explains how to "Carryover your unused data into the next billing cycle," stating in part: "At the end of the billing cycle, any remaining data is carried over into the next billing cycle."[8] Although these examples are few in number, the record supports a finding that UNLIMITED CARRYOVER as used on the specimen will be perceived as merely an informational slogan which conveys information about carrying over unlimited data from one telecommunications billing cycle to the next rather than as a service mark to indicate source. *See, e.g.*, *In re Standard Oil Co.*, 275 F.2d 945, 125 USPQ 227 (CCPA 1960) (finding GUARANTEED STARTING ordinary words conveying information about the services, not service mark for "winterizing" motor vehicles).

## III.   Applicant's Arguments

Applicant contends that it is unaware of any other telecommunications providers using UNLIMITED CARRYOVER as a source identifier, Appeal Brief at 5, 8 TTABVUE 6; that UNLIMITED CARRYOVER "is not a common term nor is it used in everyday marketing," *id.* at 6, 8 TTABVUE 7; and that the phrase "is used to brand and source identify the provision of wireless services which features additional talk, text, and data that the customer will receive if purchased separately," *id.* at 9, 8 TTABVUE 10. Yet the record is devoid of any direct evidence to indicate that the purchasing public recognizes UNLIMITED CARRYOVER as a source indicator for Applicant's services, and indicates the opposite instead. *See Volvo Cars*, 46 USPQ2d at 1461. While the record may not support a finding that UNLIMITED CARRYOVER

---

[8] December 5, 2016 Office Action at TSDR 11.

is a widely used phrase, it does support a finding that the meaning of the phrase simply provides information about the services, and Applicant's manner of use underscores and illustrates that meaning, and how it would be perceived by consumers as such.

Applicant also points out that it owns a registration on the Supplemental Register for the same mark it seeks to register here, UNLIMITED CARRYOVER in standard characters, for the following services in International Class 38: "Cellular telephone communications services, cellular telephone telecommunications services provided via prepaid air time cellular telephones; cellular telephone telecommunications services provided via prepaid air time cellular telephone calling cards."[9] Applicant emphasizes that the specimen for that registration is identical to the subject specimen, arguing: "This shows that not only is Applicant's Mark capable of serving as a service mark, it actually *does* function as a service mark, as it is shown on the specimen of use." Reply Brief at 2, 11 TTABVUE 3. The specimens for the registration on the Supplemental Register are not of record, and Applicant's argument is circular. The registration also is more than eight years old; consumer perception of UNLIMITED CARRYOVER may have changed with the passage of time. "It has been said many times that each case must be decided on its own facts." *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010) (citation omitted). The Board must make its own findings of fact, and that duty may not be delegated by adopting the

---

[9] Registration No. 3868810, June 5, 2017 Response to Office Action at TSDR 13-15. The registration issued October 26, 2010, and a Declaration of Use under Section 8 of the Trademark Act was accepted January 21, 2017.

conclusions reached by an examining attorney in another application. *In re Sunmarks, Inc.*, 32 USPQ2d 1470, 1472 (TTAB 1994); *In re BankAmerica Corp.*, 231 USPQ 873, 876 (TTAB 1986). This is particularly the case when the prior registration is nearly a decade old and involves the rapidly evolving field of telecommunications.

Moreover, an applicant cannot overcome a failure-to-function refusal issued on the ground that the matter does not identify source and is merely informational by seeking registration pursuant to Section 2(f). *Eagle Crest,* 96 USPQ2d at 1229. Matter that does not operate to indicate the source or origin of the identified services and distinguish them from those of others does not meet the statutory definition of a service mark and may not be registered, regardless of claims of acquired distinctiveness.

Finally, Applicant relies on third-party registrations for ROLLOVER DATA and ROLLOVER MINUTES, arguing: "If a term such as ROLLOVER can function as a trademark in the telecommunications industry, so can CARRYOVER." Reply Brief at 3, 11 TTABVUE 4. The Board, however, must assess each mark on its own facts and record. *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to [applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court."). This argument is not persuasive.

Considering all the record evidence, we find that the specimen of use is insufficient to show use of UNLIMITED CARRYOVER as a mark in connection with the identified telecommunications services.

**Decision:** The refusal to register is affirmed.